146



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5027
Re: Under the facts stated is
The American Red Cross liable
for ad valorem taxes on building
located in the City of Cleburne,
Texas?

Your letter of December 15, 1942, submitted for our
opinion the question as to whether the Dallas County Chapter
of The American Red Cross could own and hold real property
free from ad valorem taxes. Upon our request for additional
information, Mr. W. H. Prather, Secretary of the Dallas Chapter,
in his letter of April 5, 1943, replied as follows:

"Reference is made to your letter of January 21,
1943, concerning the application of ad valorem taxes
accruing against the property in the City of Cleburne,
Texas.

"1. 'To what use is this property being put at
this time.?'

"This property is well rented and after deduct-
ing city, state and county taxes, insurance and upkeep,
the net proceeds are about 2% and are used in the main-
tenance of the Dallas Chapter, American Red Cross activi-
ties.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

"2.   'What are your plans as to its future use?'

"The property is on the market for sale.  It
is the only piece of property held.  We have tried
to get a reasonable price for this property since
it was accepted by deed August 1, 1933.  If the
property can be sold the proceeds will be invested
in U. S. Bonds.

"3.   'If convenient this Department should
like you to send a pamphlet of the law that authorizes
creation of the local chapter of The American Red
Cross and copy of the Charter.'

"The American Red Cross was incorporated
by an act of Congress in 1905 as a Federal agency.
As we understand it there is no law which creates
local chapters.  We are enclosing herewith a photo-
static copy certifying that the Dallas County Chapter
has jurisdiction and is specifically authorized to
carry on Red Cross activities and monthly reports
are sent to the American National Red Cross.  Specifi-
cally Red Cross Chapters are not permitted to hold
title to real estate and the title to the property
at Cleburne is in the name of the American Red Cross,
Washington, D. C., a Federal agency.  Should the
property be sold by the American Red Cross, the
proceeds would be turned over for maintenance of
the Dallas Chapter.  While we are not using the
property in question directly for Red Cross by
occupancy, the proceeds are being used for main-
tenance of the Dallas Chapter.  We believe that
this property should be exempt from taxation and
are asking that you so rule."

Honorable George H. Sheppard, Page 3

We have held expressly in our previous opinion
No. O-4291 The American Red Cross, or any duly organized
or existing chapter thereof, to be an instrumentality of
the United States. Unlike the situation of many other
instrumentalities of the Federal Government, where Con-
gress has expressly provided for local nondiscriminatory
ad valorem tax liability, the statutes are silent regarding
such tax liability or immunity of the Red Cross. Such being
the case we are inclined to follow the test laid down in the
recent case of Graves v. People of State of New York, 306
U. S. 466, 83 L. Ed. 927, 59 S. Ct. 595:

"Silence of Congress implies immunity no more than
does the silence of the Constitution. It follows that
when exemption from state taxation is claimed on the
ground that the federal government is burdened by the
tax, and Congress has disclosed no intention with
respect to the claimed immunity, it is in order to
consider the nature and effect of the alleged burden,
. . ."

A local nondiscriminatory ad valorem tax on property
of a Federal instrumentality has been upheld in numerous
decisions of the United States Supreme Court because its ef-
fect on the Government was remote and indirect. M'Culloch v.
Maryland, 4 Wheat 316, 4 L. Ed. 579 (local real estate tax
on national banks); Henderson Bridge Co. v. Kentucky, 166
U. S. 150, 17 S. Ct. 532 (state property tax on bridge used in
interstate commerce and established as a post road by Congress);
Union Pacific R. R. Co. v. Peniston, 85 U. S. 5, 21 L. Ed. 787
(state property tax on railroad property, the railroad being
chartered by the Government in order to carry out the powers
of Congress relative to interstate commerce, establishing
post roads, etc.); Thomson v. Union Pacific Railroad Co.,
76 U. S. 579, 19 L. Ed. 792 (same fact situation as in Union
Pacific R. R. Co. v. Peniston, supra); Alward v. Johnson, 282
U. S. 509, 75 L. Ed. 496, 51 S. Ct. 273 (property used in
operating an automotive stage line between points in California
under a mail carrier's contract); Indian Territory Illuminating
Oil Company v. Board of Equalization, 288 U. S. 327, 77 L. Ed.
812, 53 S. Ct. 388 (tax upon crude oil produced from exempt
Indian lands held by the company in its storage tanks); Taber
v. Indian Territory Illuminating Oil Company, 300 U. S. 1,
81 L. Ed. 463, 57 S. Ct. 334 (property used by the company
in its operations on an oil and gas lease covering lands of
restricted Pawnee Indians).

Honorable George H. Sheppard, Page 4

On the other hand there are many authorities holding the same type of tax void by reason of the tax being a direct burden on the United States Government. Clallam County, Washington, v. United States and United States Spruce Production Corporation, 263 U. S. 341 (property acquired and used for war production); United States v. Coghlan, 261 F. 425 (property owned by Federal Shipping Board Emergency Fleet Corporation and used for war production); King County, Washington, v. United States Shipping Board Fleet Corporation, 282 F. 950 (same fact situation as in United States v. Coghlan, supra); United States Housing Corporation v. City of Watertown, 113 N. Y. Misc. 679, 186 N. Y. Supp. 309 (land acquired to house workers in essential industries during World War One). It is to be noted that in each of the cases cited in this paragraph the Federal Government owned all the stock, or the entire beneficial interest in the stock, of the corporations sought to be taxed.

We believe the proper test is found in Cooley on Taxation (4th Edition), Volume 2, Section 607:

". . . The test is whether the tax deprives the persons or corporations taxed, in truth, of power to serve the government as they were intended to serve it, or hinder the efficient exercise of their power.

"It follows that a state tax upon the property of an agent of the federal government is not prohibited merely because it is the property of such an agent. 'Taxation of the agency is taxation of the means; taxation of the property of the agent is not always, or generally, taxation of the means.' A tax upon the 'property' of agents or agencies of the federal government does not necessarily deprive them of their power to serve such government nor hinder the efficient exercise of the power, and hence may be rightfully laid; but a tax upon the 'operations' of such agents or agencies, i. e., an occupation or privilege tax, being a direct obstruction to the exercise of federal power, is invalid. But where the property of a corporation, engaged in executing a federal agency, is itself the means by which such agency is executed, the property is not subject to state or local taxation."

Honorable George H. Sheppard, Page 5

See also Indian Motorcycle Co. v. United States, 283 U. S. 570, 75 L. Ed. 1277; Fox Film Corp. v. Doyal, 286 U. S. 123, 76 L. Ed. 1010.

In our opinion the property of The American Red Cross is not in itself the means by which its agency for the United States Govern.ent is executed. The Federal Government does not wholly own its stock, since there is none. Although the corporation is rather strictly supervised by its creator, and is assisted in its operations by substantial sums directly appropriated from the national treasury, the people of this nation are largely responsible for its support through voluntary contributions. Too, its purposes are not all strictly governmental in character, as shown by Subsections 3 and 5, Section 3, Title 36, U. S. C. A., which read as follows:

"The purposes of the corporation are and shall be —

"First. To furnish volunteer aid to the sick and wounded of armies in time of war, in accordance with the spirit and conditions of the conference of Geneva of October 1863, and also of the treaty of the Red Cross, or the treaty of Geneva, of August 22, 1864, to which the United States of America gave its adhesion on March 1, 1882.

". . .

"Fifth. And to continue and carry on a system of national and international relief in time of peace and apply the same in mitigating the sufferings caused by pestilence, famine, fire, floods, and other great national calamities, and to devise and carry on measures for preventing the same."

You will note that the purposes for which The American Red Cross was incorporated allow it to relieve distress in foreign lands. We believe then that its situation is distinguishable from that of instrumentalities wholly owned and controlled by the Federal Government and whose properties are the means through which the Federal powers are exercised.

We therefore conclude that ad valorem taxes laid against The American Red Cross under the present circumstances would not constitute a direct burden upon the United States.

The purposes of The American Red Cross as set forth in Title 36, Chapter 1, Section 3, U. S. C. A., show it to be a charitable organization. This being the case, we must now consider the possibility of the building being exempt from taxation by reason of our State Constitution and statutes. We quote a portion of Article 7150, V. A. C. S., as follows:

"The following property shall be exempt from taxation, towit:

". . .

"7. Public charities. -- All buildings belonging to institutions of purely public charity, together with the lands belonging to and occupied by such institutions not leased or otherwise used with a view to profit, unless such rents and profits and all moneys and credits are appropriated by such institutions solely to sustain such institutions. . . ."

It would seem from the language quoted that the property concerned here would be exempt. However, our courts have very effectively nullified this provision of the statute by their construction of Article 8, Section 2, of our State Constitution. A host of Texas decisions are in accord on the proposition that the property must be owned and used "exclusively" by the charitable organization. The latest expression by our highest court on this point is found in the case of City of Longview v. Markham-McRee Memorial Hospital, 137 Tex. 178, 152 S. W. (2d) 1112.

Since the use to which the building is put admittedly is not "exclusive", The American Red Cross is liable for the ad valorem taxes laid against the property inquired about.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Woodrow Edwards*

Woodrow Edwards
Assistant

APPROVED MAY 6, 1943

*Gerald C. Mann*

WE:AMM

ATTORNEY GENERAL